PEOPLE ex rel. GILL v. WARDEN OR KEEPER OF CITY PRISON.

(Supreme Court, Appellate Division, Second Department. December 30, 1912.)

DISORDERLY HOUSE (§ 6*)—OFFENSES—STATUTE.

    That the lessee of premises was told by a police officer that women residing on the premises had been convicted as common prostitutes and were there carrying on their illegal business does not show the lessee guilty of the offense denounced by Penal Law (Consol. Laws 1909, c. 40) § 1146, as amended by Laws 1910, c. 619, of knowingly permitting premises to be used for purposes of ill fame.

    [Ed. Note.—For other cases, see Disorderly House, Cent. Dig. §§ 6, 9–13; Dec. Dig. § 6.*]

Appeal from Special Term, Kings County.

Habeas corpus by the People, on the relation of Alice Gill, against the Warden or Keeper of the City Prison. From an order discharging relator, defendant appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Hersey Egginton, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for appellant.

Jacob Eilperin, of Brooklyn, for respondent.

WOODWARD, J. The relator was arrested on the 27th day of September, 1912, and arraigned before a city magistrate in the borough of Brooklyn, charged with keeping and maintaining a disorderly house. The relator was held for examination, and thereafter she was surrendered to the warden, and the bail theretofore given exonerated. The relator now asks to be discharged from custody on the ground that:

"No sufficient complaint has been made against your relator charging her with the commission of any crime or with any act which warrants her imprisonment."

The learned Special Term, on a hearing upon the writ of habeas corpus, has discharged the relator, and appeal comes to this court.

The information on which the relator was arrested is made by a police officer, one George M. Bilaffer, who deposes and says that:

"On the 27th and 28th days of August, 1912, and on other days in said month, * * * one Alice Gill did willfully keep and maintain at the premises, 59 Willoughby street, a disorderly house and place for the practice of prostitution in violation of section 1146 of the Penal Law, as follows."

He then states that on the 27th day of August, 1912, in company

with another police officer, who does not appear further in the proceedings, he—

"went to the premises 347 Bridge street, in the borough of Brooklyn, at which place the said Alice Gill resided; that he saw the said Alice Gill, and asked, her if she was the lessee of the premises 59 Willoughby street, in the borough of Brooklyn, and said Alice Gill replied that she was such lessee. Deponent then told defendant that Lizzie Conners, Mabel Johnson, and Florence Burke were common prostitutes, and practiced prostitution in her house by bringing, men in for that purpose, and that they had been convicted of being common prostitutes, to deponent's knowledge. Deponent also told defendant that she must at once cease to permit and allow her house to be used for the purpose of unlawful sexual intercourse and prostitution, and that she should forthwith dispossess and oust from said premises the said women; that thereafter, and since the said 27th day of July, 1912, the defendant has unlawfully and willfully permitted and allowed the said Lizzie Conners and Mabel Johnson and other women whom deponent knows to be common prostitutes and engaged in unlawful sexual intercourse to live in said house and to practice unlawful sexual intercourse and prostitution with men in said house."

The information then sets out the grounds which the deponent has for alleging that Lizzie Conners and Mabel Johnson are common prostitutes, and that one Jennie Morgan is of the same stripe, and closes with the allegation that:

"The defendant, with full knowledge of the fact that said women solicited and received men for unlawful sexual intercourse and prostitution at the said premises 59 Willoughby street, * * * did not and has not taken any action to dispossess any of said women, nor has the defendant made any effort to stop the disorderly and lewd acts at the premises aforesaid, although the defendant at all times hereinbefore mentioned continued as lessee of said premises."

Does this information charge the defendant with any crime? The learned court at Special Term has held that it does not, and this is the only important question to be determined upon this appeal. It is not claimed that the defendant kept a house of ill fame at her own residence. She is said to have admitted that she was the lessee of certain premises at 59 Willoughby street; but there is no allegation that she had subleased the premises to Lizzie Conners and Mabel Johnson, or to any other persons, or that these women, or any other women, were in possession of the premises through any relations with the defendant. So far as the information goes, the Conners and Johnson women may have been unlawfully in possession of the premises, or they may have been in possession under some sublessee.

But, assuming that these women were tenants of the defendant, is the mere fact that a policeman tells a lessee that his premises are occupied by common prostitutes, and that they are practicing prostitution in his house, ground for asserting that he knows that his tenants are soliciting and receiving men for immoral purposes? A policeman speaks with no greater authority than any other citizen upon matters of this character, and certainly no one will contend that a mere statement of this character on the part of a private citizen would call upon the defendant to take any active steps. The material allegation of fact is that:

"Since the 27th day of July, 1912, the defendant has unlawfully and willfully permitted and allowed the said Lizzie Conners and Mabel Johnson and other women whom deponent knows to be common prostitutes * * * to

live in said house and to practice unlawful sexual intercourse * * * in said house."

But the fact that the deponent knows these women and other women to be common prostitutes, and engaged in unlawful sexual intercourse and prostitution with men in said house, is not knowledge on the part of the defendant of these facts; and we know of no rule of law which compels her to accept as true that which is stated to her by a police officer, any more than she would be obliged to accept such statement from any other person. The deponent may have had full knowledge of all the facts which he states, but the facts set forth in the information do not show that the defendant had any such knowledge; at most she had simply been told so by the deponent, not under oath, or in the course of any judicial proceeding, and the statute has not made it a crime for a lessee of premises to remain inactive under such circumstances. The statute (section 1146, Penal Law) provides that:

"Whoever keeps or maintains a house of ill fame, or a place for the practice of prostitution or lewdness, or takes as lessee any house, room or other premises for any such purposes, or shall keep a lewd, ill-governed or disorderly house to the encouragement of fornification or other misbehavior shall be guilty of a misdemeanor. When the lessee or keeper of a dwelling house or other building is convicted under this section, the lease or contract for letting the premises shall, at the option of the lessor, become void and the lessor may have the like remedy to recover the possession as against a tenant holding over after the expiration of his term. And whoever as lessor knowingly or with good reason to know, permits any house or room or other part of any premises to be used in whole or in part for any of the uses or purposes herein prohibited shall be guilty of a misdemeanor."

The scheme of the statute permits the lessor, upon the conviction of his tenant for any of the offenses mentioned, to terminate the lease, and makes it a misdemeanor for him to "knowingly or with good reason to know" permit the use of his premises for any of the prohibited purposes; that is, where his tenant is convicted, or he is in a position where he has good reason to know that his property is being used for immoral purposes, he is guilty of a misdemeanor if he does not act. But this language, "knowingly or with good reason to know," is to be read in connection with the clause which permits him to terminate his lease and evict his tenant upon his or her conviction of the offenses against which the statute denounces a penalty, and obviously contemplates either the knowledge of the fact of conviction, or of facts which would justify a conviction if brought to the attention of the courts, and not the mere unsworn statement of a zealous policeman. Upon conviction of his tenant, the landlord has the option of terminating the lease. If he refuses to accept such option, he is held responsible for the conduct of his tenants if he "knowingly or with good reason to know" permits the use of any part of his premises for such purposes; and this rule applies in this sense, perhaps, if there has been no conviction. But a "good reason to know" is something more than the statement of an individual that he knows certain facts, and this is plainly evidenced by the reasoning of the court in the case of People v. Wallach, 15 N. Y. Supp. 226.[1]

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 60 Hun, 584.

Here there is nothing to indicate that the defendant became the lessee of the premises for the purposes denounced by the statute. So far as the record discloses she was the lessee, but what her relations to the Conners and Johnson women were does not appear. The law presumes that if she subleased the premises she did so in good faith and in harmony with the law. If she had a long-term lease, and had sublet the premises in good faith to these women, she could not dispossess them because they had been convicted of being common prostitutes. It is only when convicted "under this section" that the lease becomes void at the option of the lessor, and she would owe no duty in the premises unless she had knowledge which gave her "good reason to know" that the premises were being improperly used; and this, as we have seen, contemplates that character of knowledge which would call upon good citizenship generally to act. Suppose the defendant to have leased the premises for a term of five years. Unless the lease contained restrictive provisions, she might sublet the premises to a third party, and that party might sublet to another, and so on indefinitely. 28 Am. & Eng. Ency. of Law, 680, 681.

There is nothing in the record here to show that these alleged common prostitutes were in possession of the premises at 59 Willoughby street under lease from the defendant. She may have leased for an entirely legitimate purpose. She may have sublet for an equally legitimate purpose, and the lessee in this instance may have made the lease to the so-called common prostitutes. Obviously in such a case the defendant could not be chargeable with any duty in the premises, and, as the information does not disclose the defendant's relations to these women, it follows that the court at Special Term has properly held that there is no crime set forth in the information.

The order appealed from should be affirmed.

JENKS, P. J., and RICH, J., concur. THOMAS and CARR, JJ., concur in result.